UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ROBERT JACOBSON,

                Plaintiff,

   -against-                                     1:09-CV-0158 (LEK/DRH)

METROPOLITAN PROPERTY &
CASUALTY INSURANCE COMPANY,

                Defendant.

_____

## MEMORANDUM-DECISION AND ORDER

**I. INTRODUCTION**

Presently before the Court is the Motion for summary judgment (Dkt. No. 15) by Metropolitan Property & Casualty Insurance Company ("Defendant" or "Metropolitan"). Plaintiff Robert Jacobson ("Plaintiff" or "Jacobson") seeks recovery against Defendant under a Standard Flood Insurance Policy ("SFIP") issued to him. Dkt. No. 1. For the reasons that follow, Metropolitan's Motion is granted, and Jacobson's action is dismissed in its entirety.

**II. BACKGROUND**

In 2001, Plaintiff bought the dwelling that is the subject of this lawsuit on a parcel of real estate located at 848 West Main Street, Catskill, NY ("parcel"). See Dkt. No. 15-14, Ex. A. The rear of the Parcel borders the outside shore of a bend in the Catskill Creek near a point at which a tributary creek known as the Kaaterskill Creek feeds into the Catskill Creek. Id. at

44:17.  In 2002, Plaintiff built an addition to the back of the dwelling, which extended out to the very upper edge of an escarpment (or sloping embankment) above a lower portion of the parcel which experienced regular flooding from the Catskill and tributary Kaaterskill creeks. See Dkt. No. 15-17, Ex. B.  The entire addition was supported by modest timber pillars.  Id. Plaintiff's wife, Ms. Sherell Jacobson, stated that she and Plaintiff constructed the addition to increase their "visual contact with the creek."  See Dkt. No. 15-19, Ex. C at 16-17.

After purchasing the parcel, the Jacobsons immediately began experiencing the effects of seasonal rising waters of Catskill Creek.  Id. at 17:13; see also Dkt. No 15-19, Ex. C-1. Possibly as soon as their second spring after purchasing the property, the Jacobsons saw the Creek wash away a "substantial" number of stairs that had been installed to go into the water. See Dkt. No. 15-14, Ex. A.  The Jacobsons concluded that replacing or repairing the stairs would be too costly and therefore decided against fixing them.  Id.  In 2005, the Catskill and tributary Kaaterskill Creeks again flooded, this time rising approximately 16 feet above normal water levels.  See Dkt. No. 15-14, Ex. A. at 15:15 & 16:24.  In 2006, the Catskill and Kaaterskill Creeks both flooded again, rising more than 16 feet above normal water level.  Id. at 18: 19-19:8.6.  The flood took with it approximately 50 to 65 feet of Plaintiff's land.  Id.

In 2006, the Jacobsons became concerned about the course of the erosion of their land they were experiencing, and they began a campaign contacting town, county, state, and federal officials seeking intervention at taxpayer expense.  See id. at 22:6, 114-116.  These officials told the Jacobsons that they were responsible for maintaining their own property.  See Dkt. No. 15-32, Ex. L at 38-39, Dkt. No. 15-34, Ex. M at 44, and Dkt. No. 15-33, Ex. L-1.  Then, in 2007, "[b]ecause of the events of the Catskill Creek flooding," Plaintiff purchased a Standard

2

Flood Insurance Policy ("SFIP") for the parcel from Metropolitan, in its capacity as a Write-Your-Own ("WYO") Program carrier. Id. at 15:3. They purchased $250,000.00 in building coverage and $100,000.00 in contents coverage, and a policy term of May 6, 2007 to May 6, 2008. See Dkt. No. 15-2, Ex. A.

On or about June 4, 2007, the Catskill and Kaaterskill Creeks flooded once again, this time with the water rising some 46 feet, and washed away another 50 feet of Mr. Jacobson's land. Dkt. No. 15-14, Ex. A. at 17:25, 28:14. Although the water rose 46 feet, it never entered his home, nor did it cause any damage to the home, and by his own admission, Plaintiff took no steps at that time to notify Metropolitan of the incident. Id. at 27:23, 29:12, 31:18). Following this flood, the Jacobsons resided in their home from June 2007 to November 2007 and noticed no damage; it was not until they returned from a month-long trip to Mexico in late December 2007 that they first noticed something out of place with their home. Id. at 30:9. On or about January 22, 2008, Plaintiff reported flood damage to Metropolitan. See Ross-Goodnough Aff. at 10. On January 22, 2008, Metropolitan assigned NCA Group, Inc., an independent adjusting company, to investigate Plaintiff's flood claim. Id. at 13.

On January 22, 2008, Metropolitan mailed to Plaintiff a letter acknowledging the loss and notifying Plaintiff that the loss was reported more than 60-days after the date of loss. Id. ¶ 12 and Ex. B. On January 22, 2008, Daniel Loucks, a geotechnical engineer retained by Dr. Jacobson, inspected Plaintiff's property and dwelling and issued a report dated January 23, 2008, stating that "the soils directly under the main house are stable, but that over time if no corrective measures are taken to the slope the slope instability would likely progress under the back of the main house." See Dkt. No. 22, Ex. F; see also Dkt. No. 15-14, Ex. A at 40:19-

3

45:03. On February 28, 2008, Mr. Loucks issued a second report changing his findings as to the stability of the land under the dwelling. See Ex. 15-24, Ex. F-2.

On January 28, 2008, Plaintiff hired a Public Adjuster, John Donnelly of National Fire Adjusting Company, Inc. ("NFA"), to assist him with his flood claim. See Lagios Aff., Ex. G-l; see also, Dkt. No. 15-14, Ex. A at 56:9-59:01, 97: 11-97: 16. On February 4, 2008, Metropolitan issued a letter to Plaintiff again notifying Plaintiff of the provisions of the SFIP that require a Proof of Loss. See Dkt. No. 15-2 ¶ 14. On February 11, 2008, Metropolitan received a letter from NFA with a purported Proof of Loss from Plaintiff, dated February 4, 2008, in the amount of "undetermined." Id. at ¶ 16.

On February 13, 2008, Metropolitan sent a letter to NFA and Plaintiff rejecting the "Proof-of-Loss in the amount of $undetermined" and notifying NFA and Plaintiff that they may appeal Metropolitan's decision to FEMA. Id. ¶ 18. On February 8, 2008, after a site inspection, NCA Group, Inc., rendered a report requesting an engineering inspection of the property to determine possible damages from flood to the dwelling. Id. ¶ 15. On February 14, 2008, Metropolitan sent a duplicate letter to NFA and Plaintiff rejecting Plaintiff's "proof of loss." Id. at ¶ 18, Ex. F.

On February 18, 2008, engineer Robert Maltempo issued a report regarding his findings from his February 17, 2008, inspection of the insured dwelling at the request of Metropolitan. Id. at ¶ 19. On February 21, 2008, NCA issued a closing report recommending denial of the claim. Id., at ¶ 20 & Ex. H. On February 21, 2008, Metropolitan sent a letter to NF A and Plaintiff denying his claim based upon the Maltempo engineer report. Id. ¶ 21. On March 26,

4

2008, John Donnelly of NFA sent a letter to FEMA appealing Metropolitan's denial of Plaintiff's flood loss claim. See Dkt. No. 15-26, Ex. G at 61:8; Dkt. No. 15-16, Ex. A-2.

On April 4, 2008, Metropolitan forwarded a summary and a copy of its claim file to FEMA at FEMA's request. See Dkt. No. 15-2 at ¶ 22. Then, on October 3, 2008, FEMA denied Plaintiff's appeal based upon Plaintiff's failure to promptly notify Metropolitan of the flood claim and due to the historic evidence of Plaintiff's damages resulting from ongoing erosion and land subsidence. See Dkt. No. 15-16, Ex. A-2. In February 2008 the Town of Catskill condemned Plaintiff's property. See Dkt. No. 15-23, Ex. F-3.

### III.     DISCUSSION

**A. Legal Standard for Summary Judgment Motion**

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In applying this standard, courts must "'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir. 2001)). Once the moving party meets its initial burden by demonstrating that no material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)

(citations omitted). Rather, the nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown, 257 F.3d at 251 (citation omitted). Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir.1991); Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990).

### B. Recovery Under the NFIP

The Supreme Court has stated that an insured seeking recovery under a federal insurance program must strictly comply with all the terms and conditions of the policy. See Fed. Corp Ins. Corp. v. Merrill, 332 U.S. 380 (1947). As such, every circuit to address the requirements of recovery under an SFIP has held that an insured's claim cannot be paid unless he has timely submitted a complete proof of loss which is signed and sworn to. See Suopys v. Omaha Property & Cas., 404 F.3d 805, 810 (3d Cir. 2005); Dawkins v. Witt, 318 F.3d 606 (4th Cir. 2003); Sanz v. U.S. Sec. Ins. Co., 328 F.3d 1314, 1318 (11th Cir. 2003); Mancini v. Redland Ins. Co., 428 F.3d 729, 733-34 (8th Cir. 2001); Flick v. Liberty Mut. Fire Ins. Co.,205 F.3d 386 (9th Cir. 2000); Cowland v. Aetna, 143 F.3d 951, 955 (5th Cir. 1998); M.D. Phelps v. FEMA, 785 F.2d 13 (1st Cir.1986). "Correspondingly, courts have resoundingly rejected the notion that 'substantial compliance' with the proof of loss requirement suffices for recovery under a SFIP." Kehoe v. Travelers Insurance Co. Case No. 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, 2009 WL 87589 (N.D.N.Y.) (See, e.g., Mancini, 428 F.3d at 734; Flick, 205 F.3d at 390; Gowland, 143 F.3d 951, 954 (5th Cir. 1998).

The materials Mr. Jacobson allegedly provided to Metropolitan cannot excuse his failure to timely submit a proper proof of loss. The materials Mr. Jacobson did submit failed to

6

indicate the amount claimed under the policy, as required by Article VII(j)(4) of the SFIP. See Exim Mortg. Banking Corp. v. Witt, 16 F.Supp.2d 174, 176 (D.Conn.1998) (holding that "[a] 'proof of loss' that does not contain the amount the insured 'is claiming' and is not filed within 60 days of the loss cannot constitute a 'proved loss' covered by flood insurance").

Jacobson does not dispute that he failed to submit a proof of loss to Metropolitan that specified the amounts claimed under the policy. Dkt. No. 22 at 5. Instead, Jacobson states that his failure to claim an amount of compensation under the policy should be excused because the National Fire Adjusting Company, Inc. was hired to assist him, and prepared and submitted Jackson's proof of loss that included the Policy, the Home, and the date of the flood. Id. at 5. However, "[t]hose who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to the law." Heckler v. Cmty. Health Srvs. of Crawford County, Inc., 467 U.S. 51, 63 (1984). This exception extends to claimants who deal with fiscal intermediaries of the Government. Id. Therefore, Jacobson had notice of the proof of loss requirement and was responsible for properly complying with its requirements.

**C. Repudiation**

Nonetheless, Jacobson contends that he should not be barred from recovering under his SFIP, because Metropolitan repudiated their policy when they denied Jacobson's claim prior to the lapse of the sixty-day period for filing proof of loss. Dkt. No. 22 at 9-12. Specifically, Jacobson asserts that Metropolitan's February 21, 2008 denial of Jacobson's February 4, 2008 claim represented repudiation under the policy prior to the lapse of the sixty-day period for filing of a proof of loss and thereby relieved Jacobson of compliance with any of the Policy's

7

conditions precedent, including the proof of loss requirement and supporting documentation requirement. Id. However, the Court finds that Jackson's argument is without merit.

In the context of disability insurance policies, many courts have expressly concluded that the mere fact that the insurer denied benefits does not rise to the level of a complete repudiation of the insurance contract. See New York Life Insurance Co. v. Viglas, 297 U.S. 672, 677 (1936); Evanoff v. Standard Fire Ins. Co., 534 F.3d 516, 521 (6th Cir. 2008); Richardson v. American Bankers Ins. Co. of Florida, 279 Fed.Appx. 295,299 (5th Cir. 2008); General American Life Insurance Co. v. Yarbrough, 360 F.2d 562, 568 (8th Cir.1966); Reassure America Life Ins. Co. v. Rogers, 248 F. Supp. 2d 974, 988 (D. Haw. 2003); Cassady v. United Ins. Co. of America, 370 F.Supp. 388, 398 (W.O.Ark. 1974); Radecki v. Mutual of Omaha Ins. Co., 583 N.W.2d 320, 327 (Neb. 1998). While mere refusal based upon mistake or misunderstanding as to matters of fact or upon an erroneous construction of a contract provision may constitute a breach of contract, it does not alone amount to a renunciation or repudiation of the policy. Mobley v. New York Life Ins. Co., 295 U.S. 632, 637 (1935).

The distinction between a dispute over the rights of the parties under the contract and a dispute wherein the insurer expressly repudiates the contract turns on whether the insurance company renounces the fact that it is bound by the contract, which would be an express repudiation, or whether it merely denies it is liable under the terms of the policy, which would merely be a dispute over its rights under the contract. Willis v. Insurance Co. of North America, 820 F.Supp. 408, 410 (E.O. Ark.1993). In other words, when an insurer bases its denial on the term and conditions of the policy, it is "standing on the policy," rather than repudiating it. See 16 Couch on Ins. § 232:43 (3rd Ed. 2009). As such, it is abundantly clear

that something more than the mere denial of a claim for benefits under an insurance contract is necessary to constitute complete repudiation of an insurance contract.  Reassure America Life Ins. Co., 248 F. Supp. 2d at 987-988; Scherer v. The Equitable Life Assurance Soc. of the United States, 190 F.Supp.2d 629, 633 (S.D.N.Y. 2001), reversed on other grounds, 347 F.3d 394 (2d Cir.2003).

In the context of flood insurance, the issue of repudiation generally involves the proof of loss requirement.  The only case found the court found that the WYO carrier had in fact repudiated the policy and relieved the insured from the proof of loss requirement is the district court's decision in Studio Frames Ltd. v. Standard Fire Ins. Co., 397 F.Supp.2d 674 (M.D.N.C. 2005).  However, numerous courts have suggested that the Studio Frames decision is essentially limited to its particular facts which are inapplicable to the facts in this case.

The Court finds that the case law regarding repudiation of flood insurance contracts is clear: in order to repudiate, the insurer must renounce the policy rather than simply denying the claim under the policy.  Metropolitan simply denied coverage, and therefore there was no repudiation of the contract.  As a consequence, Plaintiff was required to submit a timely, complete, sworn Proof of Loss.

### IV. CONCLUSION

For the foregoing reasons, it is:

**ORDERED**, that Defendant's Motion for summary judgment (Dkt. No 15) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is dismissed; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

DATED:   December 21, 2010
             Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge